This case is the Matter of Application of County Treasurer. We have Al Paulson for the appellant and Eric Terlizzi for the appellee. You may proceed. Hey, please report, counsel. This is an appeal of principle. My client's paying me more to come here and argue than the underlying sanction. But he feels strongly that he tried to do everything possibly right in this case. For three years, my client bought taxes of Mr. Terlizzi's client because they weren't paying their taxes. So after notices over three years, they knew these taxes were being purchased, my client files a petition for a tax deed on May 16th of 2012. But not only does he do that, he tries to serve notice. He has certified mail to the church. They simply didn't claim the certified mail. Sent it to Mr. Terlizzi, even though he had no obligation under the law to notify Mr. Terlizzi, he went ahead and notified. And Mr. Terlizzi admits that he got the notice. What this is about is when my client sent a registered Illinois process server to the property to serve any occupants, known or unknown, he came back and he signed an affidavit, the Illinois process server, indicating that the property was an empty lot. Based upon the process server's affidavit, my client files a pleading with the court indicating that he attempted service, but it is now an empty lot. Now, my client buys a lot of taxes throughout the state of Illinois, and he says it's not unusual when someone doesn't pay their taxes for three years that either the property burns down, it's demolished. So this didn't raise any red flags with him because it happens probably three or four times a year to him where, you know, when people aren't paying their taxes, normally the property becomes non-maintained, there's fires, lots of things could have happened. So my client ends up applying for an order issuing a tax deed. Mind you, Mr. Terlese has noticed that he was doing this, but failed to bother to even call my client and say, hey, look, there's a mistake, we can work this out. Instead, Mr. Terlese allows the tax deed to be issued to my client. My client then says, well, I'd better file a sale in error because if there's no house there, then I'm really going to take a bath on the $5,000 in taxes I paid. So he goes out to take a look at the property and finds out that, in fact, the property was not vacant, that the process server made a mistake. He immediately writes a letter to the occupant saying, hey, call me, let's work this out, I'll give you back your deed, just pay the taxes. In the meantime, Mr. Terlese files a motion to set aside the issuance of a tax deed, which my client consented to. Yeah, you're right, there was a mistake made here. And then the court entered an order on November 8th, setting aside the tax deed, and Mr. Terlese's client paid my client the taxes that he had paid the county plus the interest. My client figured at that point, the case is over, I did the right thing, made sure I notified everybody. And then over 30 days after the judgment on November 8th, setting aside the issuance of the tax deed, Mr. Terlese files a motion for sanctions saying he should get his attorney's fees. In my opinion, Mr. Terlese could have avoided this whole thing when he received certified mail of the notice of the request for issuance of a tax deed if he just called my client and said, hey, we got a problem here, let's work it out. Instead, he waits, they come to an agreement, my client consents to giving the people their property back, and then over 30 days later, all of a sudden, he's requesting sanctions. And the court specifically found that my client did not knowingly file a false pleading or affidavit with the court. My client relied on an Illinois process server who, my client's not from Fayette County, he relied on someone more familiar with Fayette County to go do the service and try to notify these landowners. My client had no reason to want to not notify them. All he wanted was his money plus interest. He didn't want the property. I think the court abused its discretion in this case. My client bent over backwards, and again, no notice requirement was required to send to Mr. Terlese, but he went ahead and did that too because he wanted to make sure that these people were notified that, hey, this is serious, it's going to be a tax deed issue. And then the court turns around and hits my client with sanctions. Mr. Paulson, did I understand you to say that the motion for sanctions was filed more than 30 days after the hearing? Yes, you did. And I'm not so sure the court even had jurisdiction. Was there any challenge made to that in the trial court? I do not believe so. I mean, the Rule 137 specifically states it must be filed within 30 days of the final judgment. Yeah. Now, I didn't get involved in this case until after all that was done, but I don't believe it was raised, although I don't know that. I just realized that actually sitting here two minutes ago that, hey, I'm not even so sure the court had jurisdiction to enter the Rule 137 order since it was 30 days after a judgment in the case. Well, jurisdiction can't be weighed. So if there wasn't jurisdiction or wasn't, we'll see what your opponent says about when it was filed. That's all I have. Thank you, Your Honor. Thank you, Your Honor. If you look at Petitioner's Own Table of Contents Record on Appeal, Appendix A-8, the order, the written order was entered on November 30th, 2012. That's at C-72. The motion for sanctions under Rule 137 was filed on December 14th, 14 days later. And clearly, your court is absolutely correct. There would have been no jurisdiction for you to the trial court or this court. It is our belief that if this court finds that the actions of the trial court were an abuse of discretion, Rule 137 is absolutely meaningless. This case is not just about the fact that the petitioner represented under oath to this court that an $80,000 house had magically turned into a garden without any inquiry whatsoever, although Rule 137 obviously puts a burden of reasonable inquiry, specifically in the statute. And I think obviously the more unusual or the more out of the normal the alleged fact is, the more reasonable that standard would require one to investigate. If my neighbor, if a client comes in and tells me the State of Illinois has implanted a chip in his brain to monitor his thoughts, I'm not justified in filing a lawsuit against the State of Illinois, and it's no defense to a Rule 137 sanction to say my client told me that. I have a duty of reasonable inquiry. Mr. Ceron had a duty of reasonable inquiry. Everything he had in his file, it's all in the record. He had a picture of this house with the address in big, bold letters, 104 South Hickory. This is the little town of Farina, Illinois. Hard to get lost in Farina. He had a floor plan. He knew it was assessed for about $80,000. Now, if you're familiar with Farina, you know there can't be too many $80,000 houses in the village of Farina. And the only thing contrary to that that he had was this comment from a process server, empty lot, garden growing on it, and that's it. Okay, based on that, he, under his, and this was in, this process was purportedly attempted to be served eight days after this petition was filed. Petition was filed the 16th of May. The process server's return is signed May 24th. Mr. Ceron did not go to court to get the tax deed until September 20th, some four months later he had. To take a couple hours out of his day to drive to Farina to see how in the world this has happened, even if you accept his testimony at face value that this happens to him three or four times a year, he also testified he does 2,000 of these every year. It's a very unusual event. He didn't pick up the phone. He didn't call his process server to the Rule 137 hearing. He didn't testify that he even called his process server and said, how in the world? Are you sure you got the right address? This is supposed to be a nice house with people living in it. What's going on here? Nothing. Does absolutely nothing. And he represents to the court. He doesn't represent to the court that I have been told. He files what he designates a report of proceedings, which clearly in fact was not a report of proceedings from the court reporter who was present there that day. It was an affidavit he prepared two weeks earlier. And he says, given address is an empty lot, not I am informed, I believe, or I've been told by my process server. He tells the court under oath given address is an empty lot. Now, Rule 137 clearly requires more than that. But this, as I said, this case isn't solely about that. There are clearly in this record outright, I can't be polite about this, outright falsehoods, outright lies to this court that were made. In his application for a tax deed, this is at C-16 in the record, he states under oath again, all notices provided by law have been duly served. Not issued, not intended to be served, could not be located. He tells the court that he has served all notices required under the tax code. As he stood there and told the court that under oath through this report of proceedings, he was well aware that only two notices had actually been served. A certified mail take notice to the county clerk and a certified mail take notice to me. My only contact whatsoever with this was happen to be the preparer of this contract for deed. And my name is on the recorded memorandum as preparer. Three years earlier, not one iota of evidence that I had anything to do with this property, had any interest in this property, was still representing either of these parties to this transaction that had occurred three years later. And that was my only involvement up to that. Council complains that I, at that point, should have called up Mr. Ceron as soon as I got that take notice and we worked it out. Well, attorneys need to have clients. I wasn't representing anybody at that point in time and I had no authority or duty. Obviously, I forwarded it on to the clients. But also, those clients would have been justified in believing that before they were at risk of losing their home, they were required to be served with process. He told the court they were served with process. He said all notices have been served. In fact, no notices have been served other than the certified mail take notice. And that's not the only notices that the tax code requires. The tax code requires actual service, just like on a mortgage foreclosure or any other. You can't take a person's real estate just based on a certified mail notice. It specifically incorporates, as to owners and parties in interest, the Civil Practice Act with respect to service. So even though he represented that he had served these parties, this record shows he had never even issued, attempted to serve the Logues at any address whatsoever. He had sent a certified take mail to a former address in Kinmundy, where they lived before they bought this house in Farina, but he never even attempted to serve the Logues anywhere. He did issue this one process to the church to serve at the lot he knew, the house he knew they had sold three years earlier, but he didn't even attempt to serve them at the address he had for them, another address he had for them in Kinmundy, where their church is. Never even attempted. The tax code requires strict compliance. The tax code requires a reasonable inquiry to find anybody within the county. He admitted it did no inquiry, yet he told the court that he had served everybody who was a party in interest and also that he had complied with all things required under the tax code to get a tax deed. As we've stated in our brief, there is no doubt that if he had stood in front of that court and told the trial court the truth, if he had said, Judge, the only people who have any notice whatsoever that I'm here today or was going to appear today are one, the county clerk of Fayette County, and two, an attorney who prepared the contract for deed three years ago, and I haven't bothered calling him. I don't know if he represents either of these parties. He's certainly not a registered agent for either of these parties. I haven't even tried to serve these people that are buying the house on contract for deed. I haven't tried to serve the church at the place where I know the church is in the village of Farina. There is no question that no tax deed would have ever issued in the first place. As I said, the tax code requires strict compliance. Just how strict it is is emphasized by a very recent first district case that was just decided November 8th. I shepherdized it yesterday. It hasn't been appealed or petitioned for re-hearing. Like all these tax deed cases, it's in re-application of county treasurer. It doesn't have all the official sites yet, but it's 2013, Illinois Appellate Lexus 771, 213, Illinois App, parenthesis first, 130103. In that case, the tax buyer sent a take notice that had a redemption period that showed it was expiring on a Saturday, whereas, of course, the general statute would have extended that to Monday. When the tax buyers didn't appear to defend, the trial court denied the tax deed, said you didn't give a proper take notice. The first district upheld the denial in saying that the provisions of the statute requiring the tax purchaser to notify the person in possession of the property when the time of redemption will expire is imperative, and a notice which specifies the wrong date cannot be regarded as any notice whatsoever. Here, literally, we have no notice whatsoever, and he knew that as he stood before the trial court and represented that he had served all these notices. Mr. Ceron, is that how you pronounce it? Ceron? Pardon me? Mr. Ceron? Yes. Was he pro se? Yes, he was. And he testified the reason, one of the reasons he does that is he has a corporation who buys these taxes, but obviously he would have to hire an attorney to go to court if he proceeded in the name of the corporation. So he has his own corporation assign the tax certificates to him, then he proceeds pro se. He's a professional tax buyer. He relies, the courts of this state are an integral part of his business. He couldn't obviously, as a professional tax buyer, couldn't exist without the assistance of these courts. Was this the only lot in the county right there? They only had the one lot in that county? That's, on this record, that is the only lot that the Lopes had any record interest in whatsoever. The church had another piece of property at a different address than Kim Money, which he was well aware of. He had that address, and in fact, that's where he sent the certified mail take notice to, although he never attempted to serve them with a process server at the address where their church is. He tried to serve them at the house they had sold, and again, never even issued a process against the Lopes. Not only that, but within, as counsel has stated, within the 30 days of obtaining this deed, with no service whatsoever, no notice whatsoever to either of the parties in interest here, and that's one other thing. He also filed in the report of proceedings that the only parties interested, the only party interested in this he listed the church and the county clerk. Didn't even name the Lopes who were contract buyers and occupants of this house. Certainly within the 30 days, when he happens to, according to his testimony, drive through Farina and realizes that if he didn't at least have inquiry notice before, now knows for an absolute fact that this was a house with a family living in it, and then this deed was, even if he was innocent, was obtained under false pretenses to the court, and his action thereafter is not to immediately file a motion with the court to say, look, judge, you shouldn't have issued me this tax deed. There is a family living there. They had no notice. They had no service. Instead of doing that, when I call him up, he wants $10,000. He had $5,000 in this. Now he says, oh, I just guessed that figure of $10,000. When that is flat out rejected, he says, well, I want $1,000 more than what I'm entitled to under the law, the $5,100 in taxes and interest. And frankly, my clients weren't going to give in to extortion. They never had any notice whatsoever of this proceeding that were required under the law. And I said, no thanks. And Mr. Paulson talks about a matter of principle. Well, that was a matter of principle. They obviously spent $1,880 more retaining me to vacate this tax deed than they could have gotten it back from Mr. Ceron with the $1,000 premium that he asked for. Instead, as a matter of principle, I think the principle here that Mr. Ceron is trying to establish is that I'll make sure it costs you more to challenge my deeds, even when I know you're wrong, than to just pay me off. And that's unsupportable. That's unsustainable. Mr. Ceron has to be told that you cannot tell a court that a home is a lot when you have made no inquiry, when you're blindly relying on some unsworn statement from a process server. You cannot get in front of a court and tell the court that you've served everybody in interest in this case when you know nobody, none of the party's in interest. Either the contract seller or the contract buyer have received any notice whatsoever. Get a tax deed based on that. Find out for sure that you told the court an untruth, and then attempt to get more money out of those people. That's reprehensible conduct. Petitioner Mr. Ceron can blame me all he wants, but I wasn't in this case at all until after he had already done all this conduct that the court found to be sanctionable. As I said, if Rule 137 is to have any meaning whatsoever, this court should affirm the ruling of the trial court. Mr. Paulson. First of all. Let me ask you this, first of all. Do you dispute that your client told the court under oath it was an empty lot? I dispute that my client filed an affidavit indicating and citing to the process server, who by the way filed an affidavit saying, the process server filed the affidavit saying that it was an empty lot. My client signed an affidavit stating that basically he relied on the process server who has indicated that it's an empty lot. Secondly, my client did comply with all requirements of service under the statute, assuming it was an empty lot. Certified mail is to the church who decided not to claim it. And attempted personal service on any occupants of the property, which was an empty lot. What about the taking orders to the loans? It was sent to their last known address, which is required under the statute. He sent out the certified mailings. I mean, the statute requires the certified mailings. He indicated to the court that he satisfied the requirements of the statute. He didn't tell the court he got service on all these people. In fact, filed with the court are the returns of service showing attempted service. So he didn't lie to the court and tell them he had service on these people when he didn't. But what we do know is, first of all, my client never extorted, and I take objection to that. He simply said, I don't know how much taxes there are. I'm guessing it might be around $10,000. When he found out that it was only $5,000 or whatever it was, he agreed to that amount. He wasn't trying to extort anybody. And Mr. Terlesi's attorney's fees were on this. $10,000 though, right? Well, he was on the phone with Mr. Terlesi. And he didn't have, you know, he buys thousands of taxes. He didn't know exactly how much was owed. He says, I'm guessing it's somewhere around $10,000. He wasn't trying to extort. He didn't know at the time he talked to Mr. Terlesi. He didn't have the file in front of me. He was just guessing at a number. And he told Mr. Terlesi that. Was there more than one petition in that county at that time? Pardon me? Was there more than one petition in that county? I can't answer that. I would doubt if he had any more. There were many. But the bottom line here is that my client took every step he could, including contacting the occupants, once he realized that the property was actually occupied. And, you know, the bottom line is they thought because it was a church they didn't have to pay their taxes. They were getting these notices. You don't not pay your taxes for three years and not know something bad is going to happen. And Mr. Ceron did everything he was supposed to do once he realized that. And he relied on us. The bottom line is he relied on a service process, a licensed Illinois process server. He relied on his affidavit that the property was vacant. It's impossible for someone who buys taxes to go personally inspect each piece of property they're buying. I mean, I guess it's not impossible, but it would be very difficult. He relied on an Illinois process service affidavit when he filed his affidavit with the court, indicating that it was an empty lot. And if the lot, in fact, was empty, he complied with every statutory requirement under the tax code, including publishing it twice in the newspaper, I think. I just don't believe sanctions are justified when he's done everything. Thank you. Thank you, counsel.